Jane **DOE**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

**Frithjof O. M. WESTBY**, Individually and as Secretary of the South Dakota Department of Social Services, and **Vern Woodard**, Individually and as Director of the South Dakota Division of Social Welfare, Defendants.

No. Civ. 74–5017.

United States District Court,
D. South Dakota, W. D.

Sept. 24, 1974.

Michael A. Wolff, Daniel L. Jackson, Black Hills Legal Services, Inc., Rapid City, S. D., for plaintiffs; Patricia A. Butler, National Health Law Program, Los Angeles, Cal., of counsel.

Morton R. Wilkins, Jr., Rapid City, S. D., for defendant Woodard.

R. K. Krogstad, Pierre, S. D., for defendant Westby.

## MEMORANDUM OF DECISION AND ORDER

Before ROSS, Circuit Judge, and BENSON and BOGUE, District Judges.

BENSON, District Judge.

In this action, plaintiff seeks declaratory and injunctive relief under 28 U.S. C. § 1343(3) and (4), and § 2201, and 42 U.S.C. § 1983. She challenges as unconstitutional, and seeks to restrain, a policy promulgated by the Social Services Department of the State of South Dakota in its administration of Chapter 28D.2 of the rules of the South Dakota Department of Social Services. Pursuant to 28 U.S.C. § 2281, a three judge court was designated to hear the case.

There is no significant dispute between the parties on the facts, and both have moved for summary judgment. The facts are:

1. At the time the complaint was filed, plaintiff, Jane Doe, was eight weeks pregnant and the unmarried mother of four children ages ten, nine, eight, and four.[1] She was the recipient of Aid to Dependent Children under the federal-state program administered pursuant to the Social Security Act of 1935, 42 U.S.C. § 601 et seq. She was also eligible for medical assistance (medicaid) under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.

2. A pregnancy is a condition which requires medical care.

3. In South Dakota the medicaid program is administered by the Defendant Frithjof O. M. Westby, who, in his position as Secretary of Social Services, is by statute the head of the Department of Social Services. Included in the Department of Social Services is a Division of Social Welfare. The head of the division is Defendant Vern Woodard.[2] Plaintiff, in consultation with her physician, decided to terminate her preg-

---

1. Plaintiff, who appears under an assumed name, was a married woman at the time of the birth of her children.

2. *See* South Dakota Compiled Laws Chapter 1-36.

nancy. Termination was not "medically necessary",.but was desired by the plaintiff because she felt she was unable to care for another child, and an abortion would be in her "best interest". She did not have the financial resources to pay for an abortion and was advised by the defendants, or their agents, through her attorney, that an elective abortion was not covered under the Medical Assistance Program and medicaid would not pay for her abortion.

4. Rule 28D.210 of the South Dakota Department of Social Services provides:

> "Physician services not covered under the Medical Assistance Program are as follows:
>
> 1. Any items or services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

Pursuant to the foregoing rule, defendants will not extend medicaid to cover payment for a nontherapeutic abortion for one otherwise qualified for medicaid, but will authorize payment for an abortion when the claim is accompanied by a written medical report indicating that a therapeutic abortion is necessary.

5. Under the South Dakota program, a pregnant medicaid recipient who chooses to carry her pregnancy to full term is given "any medical care that would be required in connection with the delivery of a child up to thirty days hospitalization of the mother and child and unlimited doctor care and services".

6. At about the twelve week point of her pregnancy, plaintiff secured an abortion from her physician. Plaintiff remains indebted to the physician for his services.

Plaintiff's principal contention, and which is of concern to this three judge court, is that the policy being followed by the State of South Dakota in its administration of the medicaid program as it relates to pregnant women, otherwise qualified for medicaid, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States by discriminating between medicaid eligible women who carry their pregnancy to term and medicaid eligible women who desire to terminate their pregnancy for nontherapeutic reasons, and thereby inhibits the one class in the exercise of a fundamental right. Defendants deny that the State is infringing upon fundamental rights and contend that the State of South Dakota, following the guidelines of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L. E.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 755, 35 L.Ed.2d 147 (1973), has revised its statutes [3] to permit all pregnant women subject to the limitations of Roe and Doe to exercise their fundamental right to an elective abortion. Defendants contend further that the State has no constitutional obligation to fund the exercise of the right.

■ Following the decision of the Supreme Court in Roe and Doe, the United States Courts have been confronted with much litigation relating to the abortion issue. The precise question before this court, or a similar question, was considered and decided adverse to the position of the within defendants in Doe v. Hale Hospital, 500 F.2d 144 (1st Cir. 1974); Doe v. Rose, 499 F.2d 1112 (10th Cir. 1974); Hathaway v. Worcester City Hospital, 475 F.2d 701 (1st Cir. 1973); Doe v. Wohlgemuth, 376 F.Supp. 174 (W.D. Pa. 1974); Doe v. Rampton, 366 F. Supp. 189, 193 (D.Utah 1973); Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E.D.N.Y.1972), vacated and remanded in light of Wade and Bolton, 412 U.S. 925, 93 S.Ct. 2748, 37 L. Ed.2d 152. The rationale of these cases

---

3. South Dakota Compiled Laws Chapter 34–23A.

is that "once the State chooses to pay for medical services rendered in connection with the pregnancies of some indigent women, it cannot refuse to pay for the medical services rendered in connection with the pregnancies of other indigent women electing an abortion, unless disparate treatment supports a legitimate State interest. . . ." *Wohlgemuth*, 376 F.Supp. at 186. *See also* Roe v. Norton, 380 F.Supp. 726 at 730 (D. Conn.1974) (dicta). It is not only complete proscription of abortion that is unconstitutional, but also governmental erection of barriers that "unduly restrict" the rights of the pregnant woman. *See Hale Hospital, supra.*

As justification for the disparate medical treatment of the State of South Dakota as applied to those medicaid pregnant women who desire a nontherapeutic abortion and those who do not, defendants advanced the argument that the State has a compelling interest in the health of the pregnant woman and safe delivery of her child, but no such compelling interest in providing medicaid funds for elective abortions.

■ This argument fails to give consideration to the fact that both classes require medical services, and that all pregnancies must terminate. The policy reflects the moral judgment of the State that the pregnancies must terminate only by birth of a child or for therapeutic reasons. This moral judgment is not a compelling state interest which would justify inhibiting a woman in her exercise of a fundamental personal right as defined in *Roe* and *Doe.*

■ The Equal Protection Clause does not prohibit disparate treatment *per se.* But where fundamental rights are limited by a state-created classification, the State must exhibit a compelling interest justifying the classification expressed by a narrowly drawn statute reflecting those compelling interests only. Kramer v. Union Free School District,

395 U.S. 621, 627, 89 S.Ct. 1886, 23 L. Ed.2d 583 (1969); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Apthecker v. Secretary of State, 378 U.S. 500, 508, 84 S. Ct. 1659, 12 L.Ed.2d 992 (1964). It is important to note the states, and their officials, are not to be concerned with the treatment of abortion on moral grounds.

"Whatever may be the private view of the individual or group of individuals, or the members of this Court, we are bound by the now established principle of law that a negation of an individual's choice in the matter of abortion during the first trimester of pregnancy is an unwarranted invasion of that person's fundamental rights as established by the Fourteenth Amendment to the Constitution of the United States." *Wohlgemuth*, 376 F.Supp. at 179.

Therefore, discouragement of abortion has been rejected as a legitimate state interest.

"It cannot be argued at this time that the justification for denying benefits to indigent women, who wish to terminate their pregnancies by abortion, is to discourage abortion. It is noted that the PMAP [Pennsylvania Medical Assistance Program], by limiting Medical Assistance reimbursement of abortion costs does not distinguish between married pregnant women and unmarried pregnant women. In Roe v. Wade, *supra,* the Court suggested that discouraging illicit sexual conduct is not a serious argument for justifying restrictions on abortions; nor would there be any such nexus here. . . . We hold that the State's decision to limit coverage to 'medically indicated' abortions, as arbitrarily determined by it, is a limitation which promotes no valid State interest. In the PMAP, the State has instituted a program to provide benefits to the poor; the State has excluded certain of the poor from the program; the

exclusion denies Medical Assistance benefits to otherwise eligible applicants solely because they have elected to have an abortion, and the State has been unable to show that the exclusion of such persons promotes a compelling State interest." *Wohlgemuth*, 376 F. Supp. at 191. *See also Klein*, 347 F.Supp. 501.

The holding of this Court is that in its administration and application of 28D.2 of the rules of the South Dakota Department of Social Services so as to provide medicaid benefits to those eligible women who choose to carry their pregnancies to term and those who receive therapeutic abortions, and deny medicaid benefits to those eligible pregnant women who elect a nontherapeutic abortion, the State of South Dakota has created a classification which is in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The plaintiff is entitled to medicaid benefits covering the cost of her abortion.

The defendants, their agents, their employees, successors in interest, and all others acting in concert with them, are enjoined from the enforcement or execution and application of Rule 28D.2 of the Rules of the South Dakota Department of Social Services, or the statute under which such rule was promulgated, so as to deny the plaintiff medicaid benefits covering the cost of her abortion.

It is assumed the State of South Dakota will give full credence to this decision, and that where medicaid benefits are extended to medicaid eligible pregnant women who elect to carry their pregnancy to term or who receive therapeutic abortions, medicaid benefits will also be extended to medicaid eligible pregnant women who elect to terminate their pregnancies through a nontherapeutic abortion.

It is ordered that judgment be entered accordingly.