George J. L. WULFF, Jr., M.D. and Michael Freiman, M.D., Appellants,

v.

Thomas E. SINGLETON, Chief of Bureau of Medical Services, Division of Welfare, State Department of Public Health and Welfare, Appellee.

No. 74–1484.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1974.

Decided Dec. 31, 1974.

On Rehearing Jan. 9, 1975.

Rehearing Denied Jan. 9, 1974.

Frank Susman, St. Louis, Mo., for appellants.

Michael Boicourt, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal from the order of a statutory three-judge district court dismissing plaintiffs' cause of action for lack of standing raises troublesome questions of jurisdiction and procedure as well as a question concerning state interference with the abortion decision. The three-judge court opinion is reported as Wulff v. State Board of Registration for Healing Arts, 380 F.Supp. 1137 (E.D.Mo. 1974). We reverse.

Appellants, Missouri licensed medical doctors, brought a three count complaint for declaratory and injunctive relief against the Missouri State Board of Registration for the Healing Arts and against Thomas E. Singleton in his capacity as Chief of the Bureau of Medical Services. The complaint challenged the constitutionality of state statutes regarding welfare benefits, claiming that the statutory wording

> is vague and uncertain, deprives plaintiffs and their patients of the right to privacy, deprives plaintiffs of their right to practice medicine according to the highest standards of medical practice, deprives plaintiffs' patients of the fundamental right of a woman to determine for herself whether to bear children, infringes upon plaintiffs' right to render and their patients' right to receive safe and adequate medical advice and treatment, deprives plaintiffs and their patients of the equal protection of the law and due process of law, and constitutes state interference with the abortion decision, all of which is in violation of the United States Constitution.

380 F.Supp. 1137, 1139.

The three-judge court dismissed Count II of the complaint for lack of standing by the medical doctors to challenge the constitutionality of the statute. See Wulff, supra at 1144. Appeal was filed in this court.[1]

---

1. The appeal concerns only Count II of the complaint. Appellants do not challenge the district court's ruling on Counts I and III.

## I. APPELLATE JURISDICTION

■ The portal question we have goes to the propriety of an appeal to this court from an order entered by a district court of three judges.[2]

That inquiry has been settled for us in the instant case by the United States Supreme Court's recent decision in Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (filed December 10, 1974).

In *Gonzalez* appellant took his appeal directly to the Supreme Court from a three-judge court order dismissing the complaint for lack of standing. The court observed that when the basis of decision by a three-judge court is lack of standing, the case is such that "a single judge could have declined to convene a three-judge court" or "the three-judge court could have dissolved itself, leaving final disposition of the complaint to a single judge." *Gonzalez*, at 100, 95 S.Ct. at 295 (footnote omitted). The Court went on to say:

We hold, therefore, that when a three-judge court denies a plaintiff injunctive relief on grounds which, if sound, would have justified dissolution of the court as to that plaintiff, or a refusal to request the convention of a three-judge court *ab initio*, review of the denial is available only in the Court of Appeals.

419 U.S. 90, 101, 95 S.Ct. 289, 296. This court has jurisdiction in the instant case.

## II. STANDING

■ The district court found that there was no logical nexus between the status of appellant-physicians and the claims they sought to have adjudicated. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). We disagree.

This court made clear in Nyberg v. City of Virginia, 495 F.2d 1342 (1974),

cert. denied, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136:

We think that the Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) has clearly paved the way for physicians to assert their constitutional rights to practice medicine, which now includes the right to advise and perform abortions.  *  *

.     .     .     .     .

Clearly the claims of medical doctors to "freely practice medicine according to the highest medical standards without arbitrary outside restraints" are inextricably bound up with the privacy rights of women who seek abortions. YWCA v. Kugler, 342 F.Supp. 1048, 1055 (D.N.J.1972). This is sufficient to present a justiciable controversy and confer standing on the physicians who bring this action. *See* Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Abele v. Markle, 452 F.2d 1121, 1125 (CA2 1971); stay granted, 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972), remanded for consideration in light of Roe and Doe, 410 U.S. 951, 93 S.Ct. 1417, 35 L.Ed.2d 683 (1973); Doe v. Turner, 361 F.Supp. 1288, 1289 (D.Iowa 1973) (3 judge court); Freeman & Bass, P. A. v. State of N. J. Com'n of Invest., 359 F.Supp. 1053, 1059 (D.N.J.1973); *cf.* O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Furthermore, the practical effect of the stringent limitation on the use of hospital facilities for performing abortions is to arbitrarily bar the physicians from activities that directly affect their economic interests. Abele v. Markle, *supra*, 452 F.2d at 1125; *see also,* Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Epperson

2.  28 U.S.C. § 1253 provides:
     Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

We reiterated the same thought more succinctly in Word v. Poelker, 495 F.2d 1349, 1350 (8th Cir. 1974), where we said:

It is now clear from the decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) that a sweeping regulation of the abortion decision and its implementation raises clear questions of constitutional dimension regarding a medical doctor's right to practice. Doe v. Bolton, *supra* at 188, 93 S.Ct. 739; Roe v. Wade, *supra* at 165 of 410 U.S., 93 S.Ct. 705. * * *.

*See* Orr v. Koefoot, 377 F.Supp. 673, 678 (D.Neb.1974); Poe v. Menghini, 339 F.Supp. 986, 990 & note 8 (D.Kan.1972); Doe v. Scott, 321 F.Supp. 1385, 1387–1388 (N.D.Ill.1970); *see also* Wounded Knee Legal Defense/Offense Committee v. F.B.I., 507 F.2d 1281 (8th Cir., filed November 7, 1974).

The statute in question interferes with the doctor-patient relationship as it relates to the abortion decision. It injects unnecessarily restrictive rules upon a constitutionally protected decision of doctor and patient as surely as did the statutes in the above cited cases. The statute interferes with the appellants' practice of medicine both professionally and monetarily.

We think that there is no question that (1) appellants allege that the challenged acts have caused them "injury in fact, economic or otherwise" and (2) "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152–153, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970). To hold otherwise in light of the authority cited above would defy logic. These medical doctors have standing to pursue this action.

## III. THIS COURT'S JURISDICTION TO REACH THE MERITS

We are urged by appellants to reach the merits of this case rather than remand to the three-judge court. This question is not without its difficulty. There is little direct authority for the propriety of our reaching the merits. Nevertheless, we are satisfied that under the circumstances of this case and in the interest of judicial economy and logic we should now address the merits of this controversy.

Of course, the three-judge court has not determined the merits. This court is not generally a court of original jurisdiction. Even so, there is authority for the proposition that when a case is properly before a Court of Appeals, the court has the power "to do what plainly ought to be done." Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091 (5th Cir. 1973), citing 9 Moore's Federal Practice § 110.25 [1] (2d ed. 1972).

In reaching the merits of a case which was before the court pursuant to an interlocutory appeal under 28 U.S.C. § 1292(b) this court said:

We adhere to the proposition that it would be improper to consider "grave constitutional questions" where there exists "reasonable likelihood" that further proceedings could help clarify the issues. Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, at 213, 55 S.Ct. 187, 79 L.Ed. 281. However, in the present proceeding no further pleadings or evidence is necessary for "refinement or clarification of the issues." United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877; United States v. Fabro, Inc., M.D.Ga., 206 F.Supp. 523. And we should dispose of all controversies "as expeditiously as is consistent with proper judicial administration." Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762.

Board of Managers of Ark. Tr. Sch. for Boys v. George, 377 F.2d 228, 231 (8th Cir. 1967). In addition, Mr. Justice Clark in writing for the Supreme Court has

indicated that effective judicial administration requires disposal of the case on appeal rather than remanding, where the point to be decided is clear. Levin v. Mississippi River Fuel Corporation, 386 U.S. 162, 170, 87 S.Ct. 927, 932, 17 L.Ed.2d 834.

It might be argued that the above authority, though persuasive, should not apply in the instance of an appeal to the Court of Appeals from a statutory three-judge court.

The Supreme Court has made it clear that the three-judge court mandate must be construed quite narrowly. "Congress established the three-judge court apparatus for one reason: to save state and federal statutes from improvident doom, on constitutional grounds, at the hands of a single federal district judge." *Gonzalez, supra*, 419 U.S. 97, 95 S.Ct. 294.

For this court to get to the heart of the matter and dispose of this case on the merits will not conflict with the policy behind the statute. Indeed, we think this case is particularly proper for disposition in this court since "[w]hile § 2281 calls for three judges to enjoin a statute 'upon the ground' of its 'unconstitutionality,' we [the Supreme Court] have held that three judges are not in fact, necessary where the unconstitutionality of the statute is obvious and patent * * *." *Gonzalez, supra*, at 97, 95 S.Ct. at 294, footnote 14, citing Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

The statute in question is obviously unconstitutional, and it is our view that the case might well have been decided by one federal judge. *See generally* Roe v. Norton, 380 F.Supp. 726, 728 (D.Conn. 1974). Accordingly, we choose to make final determination of this case.

## IV. MERITS

The statute before the court states:

Benefit payments for medical assistance may be made on behalf of those eligible needy persons who are unable to provide for it in whole or in part, with any payments to be made on the basis of the reasonable cost of the care

or reasonable charge for the services as defined and determined by the division of welfare unless otherwise hereinafter provided, for the following:

    *    *    *    *    *    *

Family planning services are defined by federal rules and regulations provided, however, that such family planning services shall not include abortions unless such abortions are medically indicated.

As in Word v. Poelker, *supra* 495 F.2d 1349, 1350, the issue in this case concerns the facial constitutionality of the statute viewed against the glare of the Supreme Court's decisions in Roe v. Wade; Doe v. Bolton, and the precedent which has developed as a result of those cases.

We find it unnecessary to review again *Roe* and *Doe* or what this court has said in applying those cases. Suffice it to say that the statute here provides medical payments if the pregnancy is carried to term or for therapeutic abortions but not if a nontherapeutic abortion is performed. This classification is a clear violation of the Equal Protection Clause of the Fourteenth Amendment.

There is ample case authority for the holding that a welfare payments statute which places special regulation on abortion but not upon other medical procedures cannot stand in light of the Supreme Court decisions. Doe v. Rose, 499 F.2d 1112 (10th Cir. 1974); Doe v. Westby, 383 F.Supp. 1143 (W.D.S.D., filed September 24, 1974); Roe v. Norton, 380 F.Supp. 726 (D.Conn.1974); Doe v. Wohlgemuth, 376 F.Supp. 173 (W.D.Pa.1974); Doe v. Rampton, 366 F.Supp. 189 (D.Utah 1973); Klein v. Nassau Co. Medical Center, 347 F.Supp. 496 (E.D.N.Y.1972); see also Doe v. Hale Hospital, 500 F.2d 144 (1st Cir. 1974).

The control meted out by this statute does not give proper consideration to the conflicting constitutional interests involved. *Word, supra,* 495 F.2d at 1351. It is further invalid since the welfare parent and her physician are discriminat-

ed against by reason of the patient's poverty. *Compare, e. g., Klein, supra.*

■ We declare RSMo 208.152(12), V.A.M.S., to be unconstitutional on its face. Injunctive relief should be unnecessary. We assume that the state will abide by the ruling of this court and that medical assistance payments will be made on a nondisparate basis to those eligible needy persons who elect to carry their pregnancy to term or who receive therapeutic abortions and also to those who elect nontherapeutic abortions.

Reversed.

PER CURIAM.

■ Appellants seek clarification of our holding and further request that we award to appellants a reasonable attorney fee.

It was the Court's intention and we now reiterate our holding that that portion of RSMo 208.152(12), V.A.M.S., which states "that such family planning services shall not include abortions unless such abortions are medically indicated" is unconstitutional.

The application for attorney fee is denied.